UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) Docket No. 1:22-CR-10284-LTS |
| | ) |
| | ) |
| SAMMY SULTAN | ) |

**SENTENCING MEMORANDUM**

**I.   Introduction**

Mr. Sultan faces sentencing for making threats through phone calls, directed toward Tufts University, in violation of 18 U.S.C. § 875(c). Mr. Sultan's actions caused distress to the dispatcher receiving the call, and prompted a widespread response from Tufts University Police Department on campus to determine whether there was an actual, live threat. Mr. Sultan was in California when he made the calls. The situation is made more serious by the fact that this is not Mr. Sultan's first offense of this kind. He was previously convicted of obscene or harassing phone calls in 2017. PSR ¶ 58.

The difference, at this moment, is that Mr. Sultan has been able to experience actual and real regret for his actions and the effects he caused on the community, which is one step in a long line of steps he will walk towards repairing the harm he caused. He has been able to meaningfully accept responsibility for his crime, and to concentrate his attention on how to repair the harm he caused Tufts University, the dispatcher, law enforcement, and the wider community of students and their families. Mr. Sultan was fortunate enough to participate in the Restorative Justice program offered at Wyatt. To

say that this has been a revelation to this defendant is to put it lightly. Mr. Sultan reflects on his participation in the program:

> "Now, when I think about the climate in this country, with school shootings and mass shootings, I see the gravity of my crime very plainly. I truly never thought about this before, especially about how this would impact the victims in my case. This wasn't a consideration until I heard the victim impact statements in Restorative Justice and read more about this and then went farther in the restorative justice process. I had no idea the trauma and pain I inflicted by my actions, and the pain they may have endured because of me. I have a tough time coming to grips with what I put all these people through, as truly innocent victims that had nothing to do with the anger I was feeling. I can't imagine the fear they had sheltering in place worrying that someone might come through the door. Also the fear of the officers who had to look around the campus, worrying about the students and also worrying that they could be hurt. Also the fear for students, who are just trying to go to school. All of these people had families at home too. This never once occurred to me."

Exhibit A, letter from Mr. Sultan.

Mr. Sultan agrees that the advisory guidelines in this case are properly calculated at 30-37 months. The sentencing recommendation from the defense takes into consideration the criminal conduct, the United States Sentencing Guidelines, and the 3553(a) factors. To be clear: absent Mr. Sultan's genuine participation in Restorative Justice program, a guideline sentence, even a mid to high range, would likely be the only sensible outcome, given his prior conviction. After accounting for the nature and history of the offense, as well as the history and characteristics of the defendant, and the need for the sentence to address rehabilitation and mental health needs, the defense maintains that a sentence of 24 months incarceration, followed by 3 years of supervised release, is appropriate. Far more significant than the length of incarceration in this case is careful attention to the conditions of supervised release that will both support and monitor him in

the community following release. The Court's attention should focus on the following: drug treatment and a commitment to sobriety; encouragement to attend NA meetings even following completion of any treatment program; obtaining a sponsor; regular and continuous mental health treatment including counseling and maintaining prescribed medication; employment training; limited internet use. These conditions have been outlined in the Presentence Report and are appropriate in this case.

For the first time, Mr. Sultan has been able to identify with the victims of his crimes. The unique features of this case, including the changed mindset of the defendant, allow for a sentence that reinforces the progress made over the last year. Simply put, the real work, and the test of lasting rehabilitation, will happen in the community during the next phase of Mr. Sultan's sentence. Consistent with this recommendation are Exhibits B, E-G, certificates earned from programming while in pre-trial custody.

## I. Background, History, and Characteristics

Mr. Sultan was born in Oakland, California and grew up alongside his two sisters. His parents, ethnically identifying as Egyptian and Palestinian, were born in Jerusalem. The emigrated to the United States to start a family and settled in California. Mr. Sultan's father worked in retail sales, and his mother was a homemaker. As a child, Mr. Sultan had a complicated relationship with his father, who was a strict disciplinarian towards his children, and who had a tumultuous relationship with Mr. Sultan's mother. PSR ¶ 68-69. Mr. Sultan recalls his father being verbally and emotionally abusive towards him throughout his childhood, and eventually their relationship became more distant. Id.

Mr. Sultan graduated from High School in 1991, and then attended college for a short period of time, before he got into criminal trouble – a vandalism conviction when

he was 19 years old. He stopped attending school, and instead worked in a variety of employment roles: supermarket, factory, and union work. He was working as a machinist in his 20's when he first started using methamphetamine. ███████████ ████████████████████████████ This substance abuse continued for a staggering 25 years, including prior to his arrest in this matter (April 2022). Mr. Sultan used methamphetamine to feel more functional and productive, and his use escalated when he was under stress. Id. His drug use also led to additional contacts with the criminal justice system, including a fateful arrest in his early 30's that had a monumental impact on his life for years and years to come. During that encounter, Mr. Sultan recalls a female officer used a taser to control his movements during the arrest.

At that time, Mr. Sultan had no formal mental health diagnosis, nor was he treated by any mental health providers until years later. Through his 20's and 30's he used methamphetamine in conjunction with anabolic steroids to cope with the stresses he experienced in life. He bottled up his anger. Going to the gym was the only health outlet he found to manage these feelings.

Around 2016, his mother's health began to significantly decline. After two back surgeries, and a dementia diagnosis, she needed full-time care. Mr. Sultan assumed these primary care responsibilities. Id. Mr. Sultan's older sister worked a job and earned income to support the family, and Mr. Sultan provided care for their mother. He cooked for her, bathed her, and took her to the frequent doctor appointments. Mr. Sultan's mental health suffered tremendously as he watched his mother decline in his care. His mother passed away in 2017, and his father in 2020.

████████████████████████████████████████████████████████████████

4

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

Mr. Sultan was not arrested right away in conjunction with the present case.

██████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████ ████████████

██████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████

████████████████████████
████████████████████████
████████████████████████
████████████████████████
████████████████████████

Mr. Sultan took courses and began to reflect on what his life would be like following a period of incarceration in this case. He was mainly focused on "getting out." It was not until his participation in the Restorative Justice pilot program offered at Wyatt did he begin to really take stock of his own behavior in this case, and how his actions harmed real people in the community.

> "After I got arrested in this case I started taking classes while in jail with no real expectations of learning anything, because I thought I knew it all. But it was really when I started the 2-day Restorative Justice class that I started to think about things differently. I stared to hear things like actions and consequences and trigger events, and harm and what it means to repair. I heard from victims of violence. It opened something up in me. I learned that there are no victimless crimes, and definitely not in my case." Exhibit A.

## II.     Nature and Circumstances of this Offense

The conduct in this case occurred in May 2021. Mr. Sultan was arrested in April of 2022. He was removed from the Northern District of California and appeared in the District of Massachusetts on June 8, 2022. On November 7, 2022, Mr. Sultan pled guilty to an Information in this case – he was prepared to accept responsibility early on in the case. However, he did not fully "accept responsibility" until later in the legal process, when he participated in the Restorative Justice program in 2023.

The facts of the case are straightforward and uncontested, and there are no arguments excusing or minimizing his conduct. Further, Mr. Sultan feels clearheaded now, and ashamed by this past behavior. Mr. Sultan never had any intent to carry out the threats he made; he was over 3000 miles away, in California, at the time. But he did intend to scare and humiliate the dispatcher. His actions carried serious criminal

6

consequences and had layers of affected people, including the dispatcher; the law enforcement who responded. He did not appreciate that the campus and local police would mobilize to investigate; he did not think about the students, the families of the dispatchers, or the families of law enforcement. Mr. Sultan, if thinking about anything, was thinking about his own negative experiences with law enforcement in the past. He was not medicated, he was coming off drugs, he was angry. He was disconnected from the humans at the other end of his phone.

> "My first instinct was to blame the authorities to justify my actions. Years ago, I was held down and tazed and also pepper-sprayed by a female officer while I was on the ground and in handcuffs. I held onto this anger for a long time. When I made these calls, I wanted to put a lot of fear into every call I made and to make them feel the way I did – humiliated and embarrassed. I justified it each time." Exhibit A.

In December 2022 Mr. Sultan was accepted into the pilot RJ program offered at Wyatt. He participated in the pre-workshop sessions and then 2-day workshop in January 2023. Following the 2-day workshop, he was interested in continuing with restorative justice after-program of reading groups. After participating in the reading groups, he decided he wanted to meet with the victims involved in his case, if they were willing to agree to participate.

Mr. Sultan's experience in the Restorative Justice program was transformative. He went from having no compassion towards or connection with the victims receiving these calls, to a mindset of understanding how he caused harm to each victim. He was also able to reflect on the connection between the hurt he experienced earlier in his life, and the irrational and threatening response he took, towards innocent people who happened to work in law enforcement.

7

> "I was very blessed o be able to get accepted to this Restorative Justice program. It has opened my eyes. I got to sit down with the people I hurt. I feel repaired from the experience. The only thing I can do is make a commitment to Do Better. Actions are louder than my words. I know that I am at my worst when I am using methamphetamines and steroids. I have battled this addiction for what feels like my whole life. I cannot go back. I am also my best when I am taking my medications. Talking to my therapist. I had a job opportunity before my arrest as a medical transporter. I enjoy working with elderly people. I took care of my mother when she was very sick. I hope these opportunities will be there for me in the future. But I know the most important thing is to keep it simple: Take my medication. Stay sober. Stay in therapy. Try to repair the harm I have done. The best way is to not harm again." Exhibit A.

### III.     Pre-Sentence Report & Sentencing Goals

The PSR calculates the total offense level as 13, after acceptance of responsibility, criminal history category IV. The defendant agrees with this calculation. The advisory guideline range is therefore 30-37 months.

The main question before the Court is how much isolation from society, in the form of jail sentence, is sufficient, but not greater than necessary. Then, what are the conditions of supervision that will best protect the public, and promote lasting rehabilitation, of Mr. Sultan. Pursuant to 18 U.S.C. §3553(a)(2), the court must consider the need for the sentence imposed to (A) reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense; (B) afford adequate deterrence to criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. Here, a sentence of 2 years isolation, followed by 3 years of supervised release, with carefully crafted conditions, comports with each of the sentencing criteria: it is sufficient, but not

greater than necessary, to achieve the sentencing goals under 18 U.S.C. § 3553(a)(1). *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

### IV.     Seriousness, Respect, Just punishment, Rehabilitation

This is a serious case, with consequences that reached far beyond the receiver of the threatening call. Here, the seriousness of the offense requires a focus on how Mr. Sultan will be supervised in the community to best protect the public. Beyond the period of incarceration, supervision in the community is perhaps the more difficult balancing act for the Court. The Court can consider supervised release both as a continued punitive action (restricting his movements and behaviors); but also as a way to protect the community.

Mr. Sultan has a prior conviction stemming from similar conduct occurring in 2015-2016. He was sentenced to a term of 24 months custody followed by 1 year of supervised release. There, recommended conditions of supervised release included cognitive behavioral therapy, and mental health and substance abuse counseling. During the 1-year term of supervision, Mr. Sultan failed to consistently attend mental health therapy or follow through with drug treatment requirements. He started programming, but was not able to follow-through with the requirements. He found the individual counseling helpful, but then missed appointments. Continued drug use was the primary contributor to his failure to follow through with these conditions. In the present case, a longer period of supervised release is necessary so that Mr. Sultan can make lasting efforts towards addressing his mental health and methamphetamine addiction. Plainly put, he needs a

longer term of supervision so that he can show compliance and be stable – sober, and mentally healthy. In Mr. Sultan's prior federal case, he had a period of only 1 year of supervised release following release from custody. This was not a sufficient period of time. Mr. Sultan needs a sustained period of supervision to address his complicated needs, and to provide the best protection of the public. Three years of supervision will allow Mr. Sultan enough time to develop a meaningful relationship with his probation officer; mental health provider; drug treatment provider.

      The Court should not consider a sentence that focuses on supervised release as opposed to a lengthier time in prison to be "too light" of a punishment based on the circumstances in this case.  The Supreme Court has recognized that even a term of probation constitutes significant punishment.  See *Gall v. United States*, 128 S.Ct. 586, 595-96 (2007) (straight probation <u>without</u> home confinement is punitive and the conditions imposed "substantially restrict ... liberty," *Emphasis added*). Here, Sultan has served over a year in custody since his arrest in this case. The focus going forward should be on addressing future needs in the community. The court also recognized that imposing a term of incarceration in the name of promoting respect for the law in a case where a particular defendant's unique circumstances suggest a more lenient sentencing alternative actually could promote *disrespect* for the law:

> Moreover, the unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing."
> *Id.*

Mr. Sultan will experience both incarceration and supervision in the community. While in custody, Mr. Sultan began significant rehabilitative work, including programming in Victim Impact; Understanding Anxiety and Depression: Obsessions and Compulsions; Living with Others; Adjustment to Incarceration; Rational Thinking; Criminal Lifestyles; as well as numerous online courses. See Exhibits E-G. He spent his time in pre-sentence custody soaking up every kind of programming offered. Most notably, it was his participation in the Restorative Justice program, especially in the victim conference, that changed Mr. Sultan's thinking. He is changed by what he experienced in the program. He is committed to continued repair for the harm he caused to the community and victims.

The period of supervised release will reinforce these goals. The proposed conditions will help keep Mr. Sultan supported and the community safe. Mr. Sultan plans to return to California where he has the support of his sister and other friends in the community.

## V.   Conclusion

Based on all of the information above, the Court can properly find that a sentence of 24 months and 3 years of supervised release is appropriate under the 3553(a) factors and sentencing goals. The requested sentence balances incarceration (punishment) with rehabilitation in the community. It is a sentence that reflects the seriousness of the offense, provides just punishment, and promotes rehabilitation.

Respectfully submitted,
SAMMY SULTAN
By his Attorney,

*/s/ Cara McNamara*
Cara McNamara
B.B.O. 712096
Assistant Federal Public Defender
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

**CERTIFICATE OF SERVICE**

I, Cara McNamara, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on October 25, 2023.

*/s/ Cara McNamara*
Cara McNamara